UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

WASHINGTON EXECUTIVE SERVICES, INC. et al.,

    *Plaintiffs*,

    v.

HARTFORD CASUALTY INSURANCE COMPANY et al.,

    *Defendants*.

Civil Action No. 20-2119 (TJK)

## MEMORANDUM OPINION

Plaintiffs Washington Executive Services, Inc. and Chevy Chase Executive Services, Inc. are shared workspace providers. In the spring of 2020, as COVID-19 spread throughout the United States, their businesses came to an abrupt halt. To comply with local governmental orders issued to prevent transmission of the virus, Plaintiffs had to stop using all their offices and meeting spaces. They reached out to their insurance provider, Defendant Hartford Casualty Insurance Company, seeking coverage for their lost income, but Hartford denied their claims. Plaintiffs thus filed this suit against Hartford and the District of Columbia in the Superior Court of the District of Columbia, seeking (1) a declaration that the District of Columbia's orders required them to stop their business operations and that their loss of income is covered under their insurance policy, and (2) a judgment that Hartford breached its contract by denying coverage for their losses. Hartford removed the suit, arguing that this Court has diversity jurisdiction because Plaintiffs had fraudulently joined the District of Columbia. Hartford then moved to dismiss Plaintiffs' complaint under Federal Rule of Civil Procedure 12(b)(6), claiming that an exclusion provision in the insurance policy precludes coverage here. For the reasons

below, the Court finds that it has jurisdiction and will grant the motion to dismiss the complaint with prejudice.

## I.     Legal Standards

"A civil action filed in state court may only be removed to a United States district court if the case could originally have been brought in federal court." *Nat'l Consumers League v. Flowers Bakeries, LLC.*, 36 F. Supp. 3d 26, 30 (D.D.C. 2014) (citing 28 U.S.C. § 1441(a)). "Where the district court's jurisdiction is dependent solely on the basis of diversity of citizenship between the parties, there must be 'complete diversity,' meaning that no plaintiff may have the same citizenship as any defendant." *Arenivar v. Manganaro Midatlantic, LLC*, 317 F. Supp. 3d 362, 366–67 (D.D.C. 2018) (quoting *Busby v. Capital One, N.A.*, 932 F. Supp. 2d 114, 130 (D.D.C. 2013)). That said, "[t]he fraudulent joinder doctrine allows the Court to disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction." *Id.* at 367 (cleaned up). To show fraudulent joinder, the removing defendant has a heavy burden: that defendant must show that "either (1) there is no possibility the plaintiff can establish a cause of action against the [nondiverse] defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the [nondiverse] defendant into state court." *Id.* (cleaned up). If there is any chance that the state court would find that the complaint states a cause of action, then the nondiverse defendant was properly joined—meaning "that there is incomplete diversity, and that the case must be remanded to the state courts." *Brown v. Brown & Williamson Tobacco Corp.*, 26 F. Supp. 2d 74, 77 (D.D.C. 1998).

Meanwhile, "[t]o survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its

face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up).  The Court accepts "well-pleaded factual allegations as true and draw[s] all reasonable inferences from those allegations in the plaintiff's favor." *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015).  Still, "a complaint must have 'facial plausibility,' meaning it must 'plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678).

Although a court seldom considers "matters beyond the pleadings for a motion to dismiss, it may consider . . . documents attached as exhibits or incorporated by reference in the complaint," as well as "documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss."  *Xiaobing Liu v. Blinken*, No. 21-cv-629 (TJK), 2021 WL 2514692, at *3 (D.D.C. June 18, 2021) (quoting *Feng Wang v. Pompeo*, No. 18-cv-1732 (TSC), 2020 WL 1451598, at *3 (D.D.C. Mar. 25, 2020)).  Thus, because Plaintiffs' complaint "refers to" the "insurance policy, the Court may consider the associated policy documents that" Hartford "has attached to the motion to dismiss."  *Gebretsadike v. Travelers Home & Marine Ins. Co.*, 103 F. Supp. 3d 78, 82 (D.D.C. 2015).  For the same reason, the Court may consider the District of Columbia's COVID-related orders.  *See also Turpin v. Ray*, No. 19-cv-2394 (RC), 2020 WL 1510412, at *5 n.6 (D.D.C. Mar. 30, 2020) (taking judicial notice of District of Columbia regulations).

## II.     Analysis

### A.     This Court Has Subject Matter Jurisdiction

On its face, Plaintiffs' complaint suggests that this Court lacks jurisdiction.  Hartford removed the case based on diversity jurisdiction, ECF No. 4 at 2, but Plaintiffs listed the District of Columbia as a defendant.  ECF No. 1-1 at 7.  And "the District of Columbia is treated like a

state 'when a person attempts to sue the District under the diversity statute in federal court.'" *Howerton v. Ogletree*, 466 F. Supp. 2d 182, 184 (D.D.C. 2006).  Since "a state is not considered a citizen," it would seem that "this suit is not between 'citizens of different States.'"  *Id.*  This Court, however, can disregard the District of Columbia's citizenship (or lack thereof) because the District was fraudulently joined.  "[T]here is no possibility" Plaintiffs "can establish a cause of action against the" District.  *Arenivar*, 317 F. Supp. 3d at 367.

As in other COVID-related business interruption coverage cases in which state or local governments have been found to be fraudulently joined, Plaintiffs' "only asserted claim against" the District of Columbia "is a standalone claim for declaratory relief."  *10E, LLC v. Travelers Indem. Co. of Connecticut*, 483 F. Supp. 3d 828, 833 (C.D. Cal. 2020).  And like those other cases, Plaintiffs' standalone claim is not justiciable.  *See Local 36 Intl. Assn. v. Rubin*, 999 A.2d 891, 896 (D.C. 2010) ("[D]eclaratory judgment authority does not supersede the rules of justiciability.") (alteration in original).[1]  Even in suits seeking only declaratory relief, there still must be "a possibility that further penalties or legal disabilities can be imposed as a result of the judgment."  *McClain v. United States*, 601 A.2d 80, 81 (D.C. 1992).  There is no such possibility here.  "Plaintiffs do not challenge the validity of th[e] [District's] orders.  The outcome of the suit has no potential impact on the orders."  *Melange Cafe LLC v. Erie Ins. Prop. & Cas. Co.*, No. 2:20-cv-00441, 2020 WL 5199275, at *4 (S.D.W. Va. Aug. 31, 2020).  All Plaintiffs ask is for a declaration that "the District of Columbia's March 24, 2020 Order issued through its Mayor required that [Plaintiffs] cease [their] business operations."  ECF No. 1-1 at 17.  "To the extent

---

[1] Neither party disputes the application of District of Columbia law.  *See* ECF No. 12-1 at 7 n.3; ECF No. 13 at 5 n.1; *see also Cambridge Holdings Grp., Inc. v. Fed. Ins. Co.*, 357 F. Supp. 2d 89, 93 (D.D.C. 2004) ("A federal court sitting in diversity will apply the choice of law rules of the forum state or district, and under District of Columbia law, insurance contracts are governed by the substantive law of the state in which the policy is delivered.") (internal citations omitted).

4

any interpretation of the orders may be required, it would be akin to the interpretation of any law, regulation, or order routinely performed by courts without requiring the participation of the regulatory body." *Melange Cafe*, 2020 WL 5199275, at *4.  Further, Plaintiffs have not "articulate[d] a ground for some future challenge to the legality of [the District's] order[s] nor explain[ed] how such a challenge could be raised in the context of this insurance dispute." *10E, LLC*, 483 F. Supp. 3d at 834.

All in all, Hartford has met the "heavy burden" necessary to prove fraudulent joinder. *Arenivar*, 317 F. Supp. 3d at 367.  This Court will thus "disregard, for jurisdictional purposes, the citizenship of . . . [the District of Columbia], assume jurisdiction over [this] case, dismiss the . . . [District of Columbia], and thereby retain jurisdiction." *Simon v. Hofgard*, 172 F. Supp. 3d 308, 315 (D.D.C. 2016).

### B. Plaintiffs Fail to State a Claim

With its jurisdiction confirmed, this Court can move on to the merits—*i.e.*, whether Plaintiffs have stated a claim under the contract at issue.  *See Tolson v. The Hartford Fin. Servs. Grp., Inc.*, 278 F. Supp. 3d 27, 33 (D.D.C. 2017) ("Because an insurance policy is a contract, it is governed by principles of contract law.") (citing *Stevens v. United Gen. Title Ins. Co.*, 801 A.2d 61, 66 (D.C. 2002)).  Under District of Columbia law, "the text of an insurance contract controls if it is unambiguous." *Whiting v. AARP*, 701 F. Supp. 2d 21, 26 (D.D.C. 2010).  If the relevant provisions are in fact ambiguous, then "the correct interpretation becomes a question for a factfinder." *Carlyle Inv. Mgmt. L.L.C. v. Ace Am. Ins. Co.*, 131 A.3d 886, 895 (D.C. 2016) (quoting *Debnam v. Crane Co.*, 976 A.2d 193, 197–98 (D.C. 2009)).  But "a contract is not ambiguous merely because the parties do not agree over its meaning, and courts are enjoined not to create ambiguity where none exists." *Id.*  The Court must "give the words used in an

5

insurance contract their common, ordinary, and popular meaning," *Redmond v. State Farm Ins. Co.*, 728 A.2d 1202, 1205 (D.C. 1999) (cleaned up), and "interpret the contract 'as a whole, giving reasonable, lawful, and effective meaning to all its terms, and ascertaining the meaning in light of all the circumstances surrounding the parties at the time the contract was made,'" *Rose's 1, LLC v. Erie Ins. Exchange*, No. 2020 CA 002424 B, 2020 WL 4589206, at *2 (D.C. Super. Aug. 06, 2020) (quoting *Carlyle Inv. Mgmt.*, 131 A.3d at 895). Here, because the plain text of the policy unambiguously bars coverage, Plaintiffs have not stated a claim under it, nor could they do so.

### 1. The Virus Exclusion Bars Coverage

The policy Plaintiffs bought says explicitly, "We will not pay for loss or damage caused directly or indirectly by" the "[p]resence, growth, proliferation, spread or any activity of 'fungi,' wet rot, dry rot, bacteria or virus." ECF No. 12-3 at 122. And this exclusion applies "regardless of any other cause or event that contributes concurrently or in any sequence to the loss." *Id.* Meanwhile, Plaintiffs' complaint notes that a "virus . . . causes the infection of COVID-19," ECF No. 1-1 at 14, and the District of Columbia order that Plaintiffs blame for their losses was issued to "slow the spread of COVID-19," M.O. 2020-053 at 3 (Mar. 24, 2020);[2] *see* ECF No. 1-1 at 14–15 (discussing effect of M.O. 2020-053). In other words, taking Plaintiffs' own allegations as true, Plaintiffs' losses were caused "directly or indirectly" by the "[p]resence, growth, proliferation, [or] spread" of a virus. Under the policy, that's the ballgame. Coverage is barred.

This Court is not alone in its reading or application of the exclusion. "Courts around the country have already had occasion to review insurance policies including the same or

---

[2] *Available at* https://coronavirus.dc.gov/sites/default/files/dc/sites/mayormb/release_content/ attachments/Mayor%27s%20Order%202020-053%20Closure%20of%20Non-Essential%20 Businesses%20and%20Prohibiti....pdf.

substantially similar exclusionary language in the context of COVID-19 related business income or business interruption claims. Those courts have almost universally concluded that the applicable virus exclusions unambiguously bar coverage for COVID-19 related claims for lost income." *Hamilton Jewelry, LLC v. Twin City Fire Ins. Co., Inc.*, No. 8:20-cv-02248 (PWG), 2021 WL 4214837, at *5 (D. Md. Sept. 16, 2021) (footnote omitted); *see also, e.g.*, *Mauricio Martinez, DMD, P.A. v. Allied Ins. Co. of Am.*, 483 F. Supp. 3d 1189, 1191 (M.D. Fla. 2020) (dismissing dental office's claims for business losses caused by COVID-19 governmental orders because "the policy expressly excludes insurer liability for loss or damage caused 'directly or indirectly' by any virus" and plaintiff's "damages resulted from COVID-19, which is clearly a virus"); *Roundin3rd Sports Bar LLC v. Hartford*, No. 2:20-cv-05159-SVW-PLA, 2021 WL 647379, at *8 (C.D. Cal. Jan. 14, 2021) ("the virus exclusion entirely bars . . . coverage" where plaintiff alleged that it closed because of closure orders issued to prevent the spread of COVID-19 since plaintiff's "loss was caused—at least indirectly—by the spread of COVID-19").[3]

      Plaintiffs' arguments against this widely accepted reading fall flat. For one, the virus exclusion is not limited to when a virus is present at the insured property. *See* ECF No. 13 at 10–11 (claiming that the "presence" of a virus is "required for a[] claimed loss to fall under the exclusion at issue"). "Courts have consistently . . . found, with similar exclusions, that there is no stand-alone 'presence' requirement." *Sys. Optics, Inc. v. Twin City Fire Ins. Co.*, No. 5:20-

---

[3] A few courts have come to the opposite conclusion, but the rationale employed in those cases is unpersuasive. One case in particular, *Urogynecology Specialist of Florida LLC v. Sentinel Ins. Co., Ltd.*, 489 F. Supp. 3d 1297, 1302 (M.D. Fla. 2020), "has been repeatedly rejected by courts interpreting the same virus exclusion." *Cosmetic Laser, Inc. v. Twin City Fire Insurance Company*, No. 3:20-cv-00638 (SRU), 2021 WL 3569110, at *9 (D. Conn. Aug. 11, 2021). The same is true for *Elegant Massage, LLC v. State Farm Mutual Auto. Ins. Co.*, 506 F. Supp. 3d 360, 378–80, (E.D. Va. Dec. 9, 2020). *See Goodwood Brewing, LLC v. United Fire Grp.*, No. 3:20-cv-306 (RGJ) 2021 WL 2955913, at *6 n. 3 (W.D. Ky. July 14, 2021) (noting that *Elegant Massage* and other cases like it "have been rejected by numerous courts").

cv-1072, 2021 WL 2075501, at *5 (N.D. Ohio May 24, 2021) (collecting cases).  That makes sense—"the exclusion is not limited to incidents of contamination on the premises."  *Id.*  In fact, the "presence" of a virus is only one of the above barred causes of loss; coverage is also precluded when the policyholder's loss is caused by the "growth, proliferation, [or] spread" of a virus.  ECF No. 12-3 at 122.  Plaintiffs blame their losses on orders issued to "slow the *spread* of COVID-19."  M.O. 2020-053 at 3 (emphasis added).

For another, it does not matter that the District of Columbia's orders were the direct cause of Plaintiffs' business income losses.  ECF No. 13 at 11–12.  "While the government closure orders may have been the final link in the loss sequence chain, there is no question that the coronavirus was the first link that set the sequence in motion."  *Sys. Optics, Inc.*, 2021 WL 2075501, at *6.  Put another way, the "[p]resence, growth, proliferation, spread or any activity of" COVID-19 was still *a* cause, even if "indirect[]."  ECF No. 12-3 at 122.  And given the anti-concurrent clause—which says that the exclusion applies "regardless of any other cause or event that contributes concurrently or in any sequence to the loss," *id.*—the virus need not be the "proximate cause" of Plaintiffs' losses, ECF No. 13 at 11.  *See, e.g.*, *Moody v. Hartford Fin. Grp., Inc.*, 513 F. Supp. 3d 496, 510 (E.D. Pa. 2021) ("[T]he anti-concurrent-clause language unambiguously dictates that the virus exclusion applies even if a virus is not the sole or proximate cause of loss.").  Without COVID-19, there would be no governmental orders.  That is enough for the exclusion to apply.

Besides, governmental orders, standing alone, cannot be a "Covered Cause[] of Loss" under the policy.  "Covered Causes of Loss" are "risks of *direct* physical loss," ECF No. 12-3 at 32 (emphasis added), and the District's orders on their own risked no physical loss for Plaintiff's property.  "[T]hose orders were governmental edicts that commanded individuals and businesses

to take certain actions." *Rose's 1*, 2020 WL 4589206, at *2. It was the intervening actions of individuals and businesses that caused "any direct changes to the properties." *Id.*; *see also Westside Head & Neck v. Hartford Fin. Servs. Grp., Inc.*, --- F. Supp. 3d ----, 2021 WL 1060230, at *5 (C.D. Cal. Mar. 19, 2021) ("Government orders aimed at slowing the spread of a virus do not pose a risk of physical loss or damage."). Indeed, the only way a policyholder could obtain coverage for losses stemming from a governmental order would be if the situation fell under the "Civil Authority" provision's limited "exten[sion]" of insurance. ECF No. 12-3 at 41; (extending coverage for "Civil Authority" only "when access to your 'scheduled premises' is specifically prohibited by order of a civil authority as the direct result of a Covered Cause of Loss to property in the immediate area of your 'scheduled premises'"). But Plaintiffs (for good reason) do not argue that this narrow provision applies here. ECF No. 13 at 22; *see, e.g.*, *Moody*, 513 F. Supp. 3d at 508 (denying claim for coverage under similar "Civil Authority" provision).

Finally, like other courts, this Court "is unpersuaded by Plaintiff[s'] argument that . . . [Hartford] could have used different language if [Hartford] wanted to make even more clear that its Policy excluded coverage in circumstances such as those that have arisen during the ongoing Covid-19 pandemic." *Vizza Wash, LP v. Nationwide Mut. Ins. Co.*, 496 F. Supp. 3d 1029, 1041 (W.D. Tex. 2020). The language used is clear, and it dooms Plaintiffs' case.[4]

### 2. Plaintiffs' Claims Do Not Fall Under an Exception to the Virus Exclusion

Plaintiffs make one last-ditch argument to avoid the virus exclusion—claiming that an exception to the virus exclusion applies here. It does not. The language Plaintiffs rely on

---

[4] Even if the virus exclusion did not apply, Plaintiffs still cannot state a claim because they have not suffered a "direct and physical loss of or damage to the property," which is required for business income coverage. ECF No. 12-3 at 40. Plaintiffs have alleged that they could not use their properties and that they "lost all function to operate as offices and meeting spaces," ECF

provides that a policyholder can recover for harm caused by a virus if the virus results from certain "specified cause[s] of loss." ECF No. 12-3 at 123. One of the "specified cause[s] of loss" is a "riot or civil commotion." *Id.* at 55. According to Plaintiffs, they pled sufficient facts to allege that COVID-19 was caused by a "riot or civil commotion" because they alleged that "[t]he virus that causes the infection of COVID-19 in the District of Columbia was and is being spread as a result of, *inter alia*, civil commotion during March 2020 and thereafter." ECF No. 13 at 17 (quoting ECF No. 1-1 at 14). But this conclusory allegation is not enough; there are no facts alleged to back it up. It is not even until their response to Hartford's motion to dismiss that Plaintiffs explain what the supposed "civil commotion" was. *See Owens v. BNP Paribas, S.A.*, 897 F.3d 266, 272 (D.C. Cir. 2018) ("We need not accept inferences unsupported by facts or legal conclusions cast in the form of factual allegations.") (cleaned up).

But even if this Court could accept that barebones allegation as true, it still does not state a claim under the exception. For the exception to apply, the "riot or civil commotion" has to cause the virus itself—not merely the "spread" of the virus. *Compare* ECF No. 12-3 at 123

---

No. 1-1 at 17, but such harms amount to neither "direct and physical loss of . . . property" nor "direct and physical . . . damage to property," ECF No 12-3 at 40. In another COVID-related business interruption case, a District of Columbia court found that, to constitute a direct physical loss, "any 'loss of use' must be caused [by] . . . a direct physical intrusion on to the insured property," which Plaintiffs cannot allege under these circumstances. *Rose's 1*, 2020 WL 4589206, at *2–3. Numerous courts are in agreement. *See, e.g.*, *Santo's Italian Cafe LLC v. Acuity Ins. Co.*, --- F.4th ----, 2021 WL 4304607, at *2 (6th Cir. Sept. 22, 2021) (affirming dismissal of COVID-related business interruption case because plaintiff did not suffer "'direct physical loss of' property"); *see also Promotional Headwear Int'l v. Cincinnati Ins. Co.*, 504 F. Supp. 3d 1191, 1200–02 (D. Kan. 2020) ("[T]he overwhelming majority of cases to consider business income claims stemming from COVID-19 with similar policy language hold that 'direct physical loss or damage' to property requires some showing of actual or tangible harm to or intrusion on the property itself.") (collecting cases); *Infinity Exhibits, Inc. v. Certain Underwriters at Lloyd's London Known as Syndicate PEM 4000*, 489 F. Supp. 3d 1303, 1308 (M.D. Fla. 2020) (finding that "there is simply no coverage" for economic losses stemming from COVID-19 closures under a policy requiring "direct or physical loss of or damage to property") (cleaned up).

("The coverage . . . only applies when the 'fungi', wet or dry rot, bacteria or virus *is the result of* . . . [a] 'specified cause of loss[.]'"), *with* ECF No. 1-1 at 14 ("The virus that causes the infection of COVID-19 in the District of Columbia was and is being spread as a result of, *inter alia*, civil commotion during March 2020 and thereafter."). Plaintiffs "ha[ve] not pleaded any facts indicating that a civil commotion was the cause of the virus that led to its alleged loss." *Hamilton Jewelry*, 2021 WL 4214837, at *6.

Nor could they. Even if Plaintiffs made the allegations in their complaint that they now put forth in opposition to the motion to dismiss—*i.e.*, that "mass gatherings in violation of the Mayor's Orders during the Spring of 2020" were a civil commotion that "gave rise to the spread of infection of the virus causing COVID-19," ECF No. 13 at 17 n.2—they still would not have stated a claim for coverage under the exception. Again, Plaintiffs are not claiming that COVID-19 was "the result of" those gatherings. ECF No. 12-3 at 123. As a matter of logic, "mass gatherings in violation of the Mayor's Orders" could not have led to the virus that those same orders were issued to control. ECF No. 13 at 17 n.2. *See also Hamilton Jewelry*, 2021 WL 4214837, at *6 (rejecting similar argument).[5]

\*   \*   \*

This Court acknowledges the toll that COVID-19 and related governmental orders placed on Plaintiffs and the business community at large. But because coverage is explicitly barred by the contract here, Hartford could not breach that contract by denying coverage. Put simply, the policy precludes coverage for Plaintiffs' losses. Thus, Plaintiffs cannot state a claim for relief under the policy.

---

[5] In addition, the exception to the virus exclusion requires a policyholder to show "[d]irect physical loss or direct physical damage to" the "Covered Property." *See* ECF No. 12-3 at 123. As explained above, Plaintiffs cannot allege such loss or damage.

## III. Conclusion

For all these reasons, the Court will grant Hartford's motion to dismiss Plaintiffs' complaint. And because granting Plaintiffs leave to amend would be futile, the complaint is dismissed with prejudice.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: September 28, 2021